Good morning. The first case this morning is Interval Licensing v. AOL. Mr. Goldstein. Thank you, Chief Judge Rader. May it please the Court. The district court in this case erred in holding that what I'll call our unobtrusive manner limitation was insolubly indefinite. And that's the case because the specification multiple times gives sufficient meaning to that term, and it's a very high bar under this Court's precedent to find the claim term is insolubly indefinite. And if this Court were to affirm, we think it would create substantial inconsistency with precedents like the Schur and Deere cases. Can I just tell you what I'm thinking, I guess, about the first argument, which would then have a spillover effect on the means plus function argument. Many of our indefinite missed cases involve something different from this one, but a couple of our cases involve terms with an ordinary English language meaning that have a very strong subjective component, and those are particularly suspicious. And I think you recognize that by seeking to find in the specification of prosecution history a substitute for the ordinary English subjective meaning, to shed that subjective meaning. And I guess my question is, it seems to me that one would need a particularly clear and convincing definition in the specification to displace what is an understandable ordinary English language meaning. Sure. So let me take it from that framework. And I guess I have a slight doctrinal disagreement, and then I'd like to talk about the word unobtrusive and whether it really does have that kind of ordinary accepted conventional meaning that really does make what we say the word means highly unusual. And I think the comparison is probably sure in Deere. You have the words easily and readily. Now, those are terms that have very broad subjective conventional meanings, but the court really displayed no hostility whatsoever, was very willing, for example, in the Schur case to draw from what it called just the examples in the specification. I think to me that's not quite the same in terms of subjectivity. And I guess the word distracting is probably more problematic than unobtrusive, although here both of them have to do with what I think is literally subjective, the user's attention as opposed to some set of physical acts that an ordinary skilled artisan ordinarily takes, and you can measure in some more objective sense how much effort is required. Again, I'll give you the example in Deere, for example, where the patent is talking about something that's easily washed off, and the court looks to the specification and finds something that's generally convex. And I do think that easily washed off is a fairly subjective term. The court said, look, we have a patent here. It's not just these terms in the air. But I think turning to our plain language where we have, I don't think we should focus on isolation, on the word unobtrusive or distracting, because it's really the phrase as a whole. And I think it's a phrase as a whole that's in the context of this patent. And maybe rather than talking in the abstract, I can take us to the plain language and what our specification says. We couldn't have claimed this spatial embodiment. You could have claimed in structural terms as a slight notification on the borders of a computer screen, the temporal embodiment. You could have claimed as occurring at a time when the computer is not otherwise in use. You wouldn't have had to rely then on the subjectivity of attention and unobtrusiveness. Well, I think it's always the case in indefiniteness cases before you in which there is a term that's alleged to be subjective that you're going to be able to say, gosh, you could have done a better job. You could have described this in more concrete terms. But the court has been equally concerned about the other side of the coin, and that is that if it becomes too easy, if we were to reduce the bar that says it's very difficult to prove that something is insolubly ambiguous, you're always going to be able in trying to defeat a patent to find some level of ambiguity. And so I think it's a fair point, Your Honor, and that is that here, as in Deere, as in Shurer, as in many of your cases, you could have described it in more definite terms. But the doctrine this Court has articulated is that's not the rule. The rule is if you have a term that is supposedly ambiguous in the claim itself, we are going to look to the intrinsic record. We're going to do what a person of the art would do, and that is to read the specification. Right. But if you do that here, and this is, I guess, why I tried to indicate that the framework within which I was thinking about it leads me to want some particularly clear and definite substitute in the specification, possibly in the prosecution history, although I'm not sure about that. And the problem, it seems to me, here is that while there are two more objective, couldn't be, I mean, definitely more objective meanings, one being kind of idle time and the other is the kind of blank space embodiment, that it's not especially clear, A, whether from the specification that what's contemplated is limited to those things, and it's not even clear whether the unobtrusive and distracting language is supposed to be about the temporal one and the spatial one or just the spatial one. So I was left thinking some standard of clarity is just not met. Okay. So I think I need to separate two different questions. One is what does this unobtrusive manner limitation mean? That's a question of does the specification provide what you would regard as a sufficient elaboration on it that a person of ordinary skill in the art would understand it? Then the second question is does that meaning attach to just one particular embodiment, what we generally refer to as the wallpaper embodiment, or also to other embodiments as well, the screensaver idle time? And so maybe I can tackle those in terms because I do think, Your Honor, that we can satisfy even, although it hasn't, to be perfectly honest, it has, I do not believe it has been articulated in any of the court's precedents, the kind of heightened standard of indefiniteness. It would be a doctrinal move for the court. I do think, in all honesty, that it will create substantial tension when lawyers, patent prosecution attorneys lay down sure and dear against the opinion that you imagine in this case. Identifying which of the terms that would require a somewhat heightened standard would be a very, very difficult thing and could sow considerable confusion. But even if one were to write an opinion that says we imagine that there could be cases where a heightened standard is required, I do think it's met here. And so maybe I can just describe to you why I think that's true. And if I were to take you to the 652 patent in column six in particular, and so starting at line 34 of that, what this language is going to do is going to describe the two embodiments we were just discussing and then contrast them. So we have in one embodiment in the invention, and this is what everyone agrees is the screensaver, the information is presented by the attention manager while a primary interaction is ongoing but during inactive periods, so that's when there's no intensive interaction. Then we have the second embodiment, which everybody agrees is the wallpaper. In another embodiment in the invention, the information is presented by the attention manager during active periods, so when the user is engaged in an intensive interaction with the apparatus, but, and this is going to be the claim language that the district court found indefinite, in an unobtrusive manner that does not distract the user from the primary interaction. And then there's the EG. Now this gives rise to a question of what you do with an example, but it is common ground between the parties that if this parenthetical gives us the definition of the claim language, then it's not indefinite because it says the information is presented in areas of a display screen that are not used by the displayed information associated with the primary interaction. And I think you understand this. I mean, my two problems are, one, the EG, and two, the column three, not column two. Column two is obviously sort of hopeful to you in the position that I think you've persuaded the re-examiner of, though not the initial examiner, about how this language is limited to the spatial embodiment as opposed to the temporal, but column three, it seems to me, muddies that considerably. Okay, let me just, I want to come immediately to this point. I will only say that we shouldn't lose track of the next sentence in column six, which I think is somewhat overlooked, and that is it draws the distinction between the temporal and spatial embodiments, and the key here I would say with respect to whether the claim language in question applies to the screensaver embodiment, remember it appears here only with respect to the wallpaper embodiment, and this next sentence distinguishes the spatial and temporal, and says with respect to the spatial, it is the second described embodiment. So it is distinguishing space and time, and the unobtrusive language is associated only with the spatial. Now going to column three, which gives you a concern. Here are our points about column three. Point one, they contend that column three suggests that the screensaver embodiment includes the limitation, unobtrusive manner. That's a very odd argument to make from column three, because that language does not appear with respect to the screensaver embodiment. There's a description of the screensaver embodiment. It doesn't include the unobtrusive manner limitation. Then there's a description of the wallpaper embodiment, which includes language that's quite parallel to the unobtrusive manner. So I'm at line 25 in column three. According to another further aspect, this is going to be the next embodiment, wallpaper embodiment, of the invention, the selective display of an image or image occurs while the user is engaged in a primary interaction with the apparatus. Which primary interaction can result in the display of the image or images in addition to the image or images generated by the set of content data? And that is, they appear side by side. They don't overlap substantially with each other. So my point in the context of this court's precedence is, if you were a person of ordinary skill in the art, you would look at this phrase, the entire unobtrusive manner, you would look in the specification and you would see several things. It is uniformly associated only with, never with the screensaver embodiment. It three times includes, excuse me, twice includes this example and that your sure decision quite clearly refers to examples so long as there isn't inconsistency in the specification being sufficient to provide definition. And also, in the column six language, it quite clearly distinguishes between the spatial and the temporal. And we think in light of that context, to say that this is insolubly ambiguous, we kind of throw up our hands and we just don't know what the claim language means, would be quite inconsistent with sure and dear. Since your time is running low, can I switch topics completely to the attention manager question? So the district court had two components, again the temporal and the spatial component. My general understanding is that there may not actually at this point be a substantive scope dispute as to the temporal one and that I took the apologies to say a user signal would come with it. It doesn't have to be a detection of some inaction or something. As to the, if we thought that that clarification was warranted but nothing else, does the agreement of non-infringement no longer resolve the case? No, I don't think so. We are pursuing the wallpaper embodiment. So the fact that we have common ground over the screensaver aspect of the intention manager wouldn't really be good enough for us. And that is we need you to conclude that the district court's understanding of the wallpaper embodiment with respect to the intention manager was incorrect because the district court just thought of classical wallpaper notwithstanding as I've just been discussing before. Okay, same question about the second piece, the spatial piece. Suppose we thought that background is really not a very good term but that we should say not in substantial use. I want the alternative to be not being used but without the word substantially. Then do you still have an infringement case? Yes. Where do you find substantially or support for that in the specification? Yes, in three different places, Your Honor. The first is that the specification says that there can be an overlap with respect to extraneous information. That's in column five. The second is doctrinally, your opinion in the biosig case is quite clear that when you're interpreting these terms, you look to the purpose and the function of the invention. And our point is simply this. Look, if we are trying to only engage the peripheral attention of the user and so there is a display of a notification at the top of the screen, the fact that it overlaps slightly with the top of, say, the Microsoft Word program or the Outlook program and doesn't really engage the central attention of the user shouldn't be a way of negating your infringement of our invention. And one final question. I know that we are not forbidden to adopt a claim construction that hasn't been specifically presented, but if you put aside the substantially, then it seems to me what you'd be arguing for here is either the original claim construction, which has its own problems, among them definiteness problems, or a claim construction if we didn't think that substantially was warranted. We would be in a position of thinking about adopting a claim construction that you didn't argue for below and that you haven't argued for here. Isn't that a problem? Well, Your Honor, I may not be focusing on the correct aspect of the claim construction, but I do believe we quite clearly told the district judge in terms that the substantially aspect of the claim construction could be struck. And I'll find the record citation for you to confirm that. But even if that were not correct, I think that it wouldn't be correct as a matter of your precedent to say that we find that the substantially modifier is not warranted, but there would be an appropriate claim construction nonetheless, but we're going to ignore it. We do defend the use of the substantially. If you think that that can't be supported, we are drawing directly from that parenthetical language in the specification, which I think would be sufficient. Thank you. Thank you, Mr. Goldstein. We consumed your rebuttal time. We'll restore the full rebuttal time. And would you give Mr. Jakes an additional four minutes if he needs to use it? Thank you, counsel. Mr. Jakes. Good morning. May it please the court. I believe the panel is putting their finger on the problem here. Insolubly ambiguous? Yes, Your Honor. If nothing else, we've dealt with a wealth of information in this specification that's outlining the parameters. The purpose and function was, I think, the words that Mr. Goldstein used and we've used in our cases. Insolubly ambiguous? Yes, Your Honor, I believe it is because of the very subjectivity of the terms that are being used. But the subjectivity disappears in the specificity of the specification, does it not? Well, let me make two points, Your Honor. First of all, I don't agree that the specification does provide that objectivity. I believe that it provides examples that may or may not meet the claim language. You can have a screensaver or you can have a wallpaper that is still obtrusive and that distracts the user. So if you look at those examples, they are not necessarily the same thing as the claim language. And I think that may be part of the problem with the subjectivity here is you can't substitute one for the other because they really don't mean the same thing. They are merely examples. And if you look at the prosecution history, it becomes even more clear where they say this embodiment, for example, may implement. And that's exactly what those examples do. They do not say this will result in something that is unobtrusive or that does not distract the user. Is that our law, that if something is less than what's commonly understood as pure lexicography, then we can't use those examples to understand what may otherwise be an indefinite claim? I think you can use examples, but they have to be more clear than the ones that are here. And I think for reference, the Deere case, the Shure case, they give more specific examples that approach being definitional. So in Deere, easily washed off was essentially said, if you do this, if you have something that's a physical structure, smooth, generally convex, you get something that's easily washed off. But these examples don't necessarily fall within the claim language. They could be obtrusive. They could still distract the user. And so that's an inherent problem with it. Now, when you use these subjective terms, language like this, which are ordinary English words, you can't just substitute something in the specification that's more concrete because you wish you'd written it that way. Mr. Jakes, my favorite, we all have our favorite cases, but my favorite indefiniteness case dealt with collapsing a wheelchair and putting it into the front seat of automobiles. And in that context, we recognize that the dimensions of each automobile is so different, you'd have to have thousands of claims to specifically show how to do it. But we've recognized that one of skill in the art would understand how to do that once you had the concept. Well, isn't this the same thing? Once you've got a computer screen and you know you're putting something up there in a manner that won't obstruct the major part of the screen, you can put it in the bottom or the top or the side or... Doesn't one of skill in the art know once you've got the basic concept? I don't think so. And for a couple of reasons. First, the orthokinetics case. The orthokinetics. Thank you for helping me with that. And I believe that the language there was so dimensioned as to be able to fit in a certain way. Yes, it was. It was so dimensioned. And for a particular automobile, you could determine whether something was so dimensioned as to fit and there was a structural limitation. It referred to whatever the vehicle was, and so you had a definite reference point. Here, we don't have that. We have the closest thing to a person of ordinary skill in the art is Intervals Excellence, who said, there could be an infinite number of contexts for deciding whether or not something would distract a user. It could depend on the color, the size, the shape, the location, all of these various parameters you would need to know. And those are not in the patent specification. If you were going to say what is unobtrusive or what doesn't distract the user, you would expect to see those sorts of things. In fact, even the location is not sufficiently definite. It could be in an unused portion. It could be in a screensaver. These claims cover more than just the screensaver and the wallpaper embodiment. And by these claims, I'm referring to the ones that use in an unobtrusive manner that does not distract the user. But there weren't definitions in Deere or Shure either. They were pretty close, Your Honor. And besides, we were dealing with physical properties easily washed off. It's not really in the eye of the beholder whether or not something is easily washed off because it referred to being convex and in shape and smooth. And if those things are met, then a person of ordinary skill in the art would understand from the specification that that's what's meant by easily washed off or readily installed in the Shure case. But each individual user is pretty similar to each individual car in the orthokinetics case, isn't it? Well, at least there you have a physical dimension that you can compare it to. So you could be so dimensioned as to fit. With an individual user, would infringement then be determined by if this user was distracted and infringes this user, a different user seeing the exact same thing would find that it doesn't infringe? That would be a problem because you could have the exact same apparatus, the exact same thing, image being displayed and in one case it would infringe, in one case it wouldn't infringe depending on how the user reacted. That's different than orthokinetics. The dimensions of the car didn't change. If something was so dimensionless to fit in the vehicle, it would fit. And the screen doesn't change here either. No, but the user's perception can't. And that's why you can't determine whether something infringes or it doesn't. Does expanding the understanding of the claim to encompass the screensaver embodiment strengthen your indefiniteness argument or not? Your Honor, I'm not sure it strengthens or weakens it. What it does show is that Integral is trying to artificially limit the claim to a particular embodiment, first of all the wallpaper, in a way that is just an example when there is another example that fits within the claim language. And they're certainly intending to cover something broader than just wallpaper and screensavers. So the claim is broader than that. And so in that sense, I suppose it helps our indefiniteness argument. Whether or not a screensaver is unobtrusive and doesn't distract the user, it has the same problems that whether or not wallpaper does that as well. There's nothing about size, shape, font, color, any of those subjective things that a user would want to know. But we have such definitional items, such as in areas of the display screen that are not used for displayed information. I mean, that's pretty definitional, isn't it? It's not what is being displayed. That is, but it could also be obtrusive and still distract the user. When we put in the counter example, and we're obviously pushing the boundaries there, but what if that unused space takes up over half the screen and isn't flashing red? Would you say that doesn't distract the user? I don't think anybody would, but it would still fit within that description there. Now, Integral is trying to narrow that again, saying we're talking about a small window at the periphery. That's not what's in the specification. They'd like to say that that's what it was, but that's not what it is. If the claim said, you know, displaying the second image in an unused area of the display screen, would you say that's indefinite? It could be a potential problem, because, well, first of all, it's not what's actually disclosed in the specification. That depends on what's otherwise on the screen. So, for example, if it's put in one particular location, at one time it may obscure what's under it, at another time it may not. And that would depend on the random chance of what the primary interaction happened to be at the time. I don't think this patent describes any way for the additional image to search for and find unused information and put it there. If it puts it in the wallpaper and it's behind everything, because it's in the background, that's one thing. But trying to just find unused space, there's no description of that. There's no description of, essentially, what pixels are being employed by the primary interaction program? No, but the primary interaction has been defined very broadly. The parties have agreed that can include the operating system or any other thing that is a primary interaction. It could be listening to music, for that matter. So it's not defined to that level, because it really could be virtually anything, and the parties have agreed on that. And that's in the stipulated claim construction. So the primary interaction could be as much as just the operating system, if that's where the user's attention was. Right, but I thought you were indicating some inability to identify what space is being used on the screen by other programs. There is not any description of that. And the example I was giving is if you had something that was an image that was displayed in a particular location, sometimes it may be in an unused area, sometimes it may not. It depends on what the primary interaction is. And you don't really know that. It would be just happenstance. For example, if you're using half the screen and something came up, it wouldn't cover it. If you're using the whole screen, that same thing, same image was shown. It might overlap it. And so, again, you really don't know whether you infringe without knowing what the individual user's at the time. So that doesn't really solve the problem. Can I ask you about this attention manager piece? Yes. First, I think, I hope this is just confirmation, that there isn't really a substantive scope disagreement about the temporal half of the district court's claim construction? I don't think there is. I think, by the way the briefing has evolved, that the court's construction said, when the program detects that the user is not engaged in a primary interaction, and Interval has said, well, that could be initiated by the user. And we don't disagree with that. And so, that means that detects is somehow softened. Okay, but I gather from what Mr. Goldstein said, that that fundamentally doesn't matter for infringement. I don't believe it does, since they're relying primarily on the long term. So why, since there's always a certain amount of discretion, I'm now focusing on the waiver question. Interval certainly told the district court two things. One, your construction was wrong. And B, and two, their construction was right. And there's obviously something between those two extremes. And they said, in particular, that yours was wrong because it failed to capture embodiments. But put aside the substantially at this point. What would be the reason for us saying, you didn't really say, even if we thought it was right, that background is too limiting a term, and it should simply borrow what's in the parenthetical there about an area of the display screen not being used. Again, put aside substantially. That doesn't seem like much of a stretch. Let me answer that in a couple of ways. First on the waiver point, they have offered a totally new plan of construction. It's not just simply ignore the word substantially. From where they were in their original construction, which I think had substantial problems, to now on appeal something completely different. Right, I guess my thought about it is that background is, at least to this lay reader, not an immediately understandable term. And the point of claim construction is to tell lay jurors how to think about this. You do the translation from skills to lay in the claim construction process. Background doesn't seem very helpful. It seems, actually, like it ought to mean space otherwise not being used. Well, I think most of us who are familiar with wallpaper think of it as background. And that's the definition that is actually given in the patent. There is a definition in column one of wallpaper. A pattern generated in the background portions of a computer displacement. As far as I can tell, except for the title background of the invention, the only use of the word background is exactly in that and saying as background. But that's not, it seems to me, either clarifying or limiting. I think it's a definition of the word wallpaper because wallpaper... We're not defining the term wallpaper. I believe it is. The term wallpaper is in quotations. And it says IE. As a shorthand label for a concept that's actually given a slightly more, in fact, more than slightly more definite description in that parenthetical. That's right, but it says IE. And that is usually meant to be definitional as opposed to EG, which is not. And the word wallpaper is used in quotation marks and followed by IE. That's just pretty close as you get to a definition, I think, in patents. And I believe that is definitional. The other points where wallpaper is used, it's again in quotation marks. It's used as that term was used in column one. I think I may have distracted you from the question that I really started asking and that is on this waiver question. Why isn't the position that they are now arguing for sufficiently close to what they argued as a reason against your claim for disruption in the district court? And sufficiently close to a useful clarification of the term you argued for and the district court adopted that we shouldn't adopt that as a useful clarification. I don't think it's correct substantively as well as being a waiver. It is a complete change from what they have said before. But saying in an area of the display screen that is not substantially used by the user's primary activity, they've changed the word activity to interaction. I'm not sure why. But what they're trying to get at are things that overlap, that are not in the background, that are not in the wallpaper. I really do want you to put the term substantially out of the equation. But it's still not supported by the specification. In their argument, they say what's wrong with our description is it doesn't cover a small window at the periphery that overlaps. You won't find the word overlap in there either. There's nothing about something in wallpaper overlapping with the primary interaction. The portion that Mr. Colston relied on, it's actually the other way around, where the primary interaction is overlapping with what's in the background, not vice versa. So you won't find that concept in here that they're trying to cover with this claim language about unused space. Mr. Jakes, I started out by saying, couldn't you claim this differently, just as unused areas or unused time segments? But if you did use those structural definitions, wouldn't we have all the same problems that you're posing now as to what really does infringe? Because every one of your examples would now cut the other way, wouldn't it? And limit them in the coverage of their invention in ways that one of skill in the art would recognize is far too limiting for what they really did invent. Well, if they chose that claim language, and not being too precise about it, but something that would satisfy the definiteness requirement by doing that, it would more closely align with what's in the specification. That's true. And so it could potentially satisfy those requirements. Whether or not it would raise another infringement problem, it really depends on how that was stated to capture. Isn't this really one of those areas where the invention covers enough potential embodiments that it is almost impossible to write, other than with 1,000 or 10,000 claims, all the possible ways that infringement could occur? I don't think so. I'm not sure I could draft what that particular language would be here on the spot. But certainly something that's more closely aligned with the specification. Would avoid the indefiniteness problems. The patent office took a second look at this. They don't agree with you. Your comment on that? Well, let's first look at what has happened. We do have the original Claim 20, which does inform what the original specification meant, which had a claim that was directed to the screensaver embodiment that used a language that included unobtrusive manner and that does not distract the user. So that was filed initially. So that tells us what that column 3 means to the extent there's any ambiguity. We also have in the prosecution history of the original patent an explicit statement saying that the screensaver embodiment is one way that can implement in an unobtrusive manner and not distract. There's also the reissue application where they filed another claim to the screensaver embodiment that did the same thing. Now, 15 years later, they are making an argument that the claims don't cover the screensaver embodiment. It's my understanding that that issue came up before the Patent Trial and Appeal Board in August where there was a board hearing in front of the board on that particular re-examination. Whether or not they will agree, I don't know. But it's not really right to erase 15 years of the public's reliance on what these claims mean by now saying we disclaim that. We meant it all along, but it's inconsistent with what happened all along. And there are cases like I think the SRAM case that said, look, even if the examiner later on in re-examination takes a position on claim construction that's inconsistent with everything that's gone on before and is not the right one, it still can be overlooked. We have a final thought for us, Mr. Jacobs. Just thank you for your time. Can I answer just one point? This is a point of clarification on this instructions issue. Right at the bottom of 67 of your brief, carrying over to 68, you say something on the question of whether compiled code fits within instructions.  I still haven't understood what you are saying. Is compiled code an instruction? My understanding is that this was in response to a hypothetical, does object code, could it be computer instructions? I don't think we've taken a position that object code or compiled code is not instructions. That's what I understand. I don't believe it's an issue that has come up, and it's only speculative whether or not it will come up. But I don't believe we have taken a position that object code or compiled code does not fall within instructions. It has to be computer instructions. So it does. You used the double negative about three times. You're answering the question yes or no. Okay. The courts of construction says a programming language, and whether or not object code falls within that, I don't really think we have taken a position on that. And if you wanted a yes or no answer, I could say no, it doesn't fit within programming language, or I could say it's not going to be an issue in the case. So those would be my two answers. Thank you, Mr. Shakes. Mr. Goldstein, we restored your rebuttal time. Thank you, Chief Judge Rader. I have five brief points. The first is just a correction about the prosecution history and the position we've taken all along, supposedly, and that is at page A1073, you'll see that the original examiner concluded that the unobtrusive manner limitation did not apply to the screensaver embodiment, and we did not challenge that, and we have acquiesced in it ever since that point. It's true, and it's a fair point for their side, that our patent prosecution attorney did say at one point in distinguishing a piece of prior art, that it did extend to the screensaver embodiment because we were taking the position that you could broadly read unobtrusive manner in a temporal sense, but the examiner rejected that, and we have never since disputed it, and our position has been consistent ever since. Also, it's A985, right? That's the example I'm giving you. I think they have a point. 985 is the point in their favor, 95, 986. We acknowledge that, but our point there... About claims 19 and 20, original claims 19 and 20. Original claims 19 and 20 are essentially the equivalent of the issued claim 12, and that's not the screensaver embodiment. That is a combination, if you will, of the wallpaper and screensaver, and that is it is during an idle time, and it displays unobtrusively. Original claims 19 and 20 do not describe the screensaver embodiment. That's the mistake that they're making. They're associating those original claims with an embodiment, and that's just not accurate. That's why there's no inconsistency in the original claims. I do think on the core question of indefiniteness, the argument of the other side rests on a really important false premise, and that is when asked, look, you are offered by the specification this parenthetical language, and also the language that I point to in column 6 and in column 3, that says it's going to be in the display area and not used by the primary interaction. They say, well, look, that's fine, but it could still be in bright red and flashing and all these other things that could distract the user, and what they're refusing to do is actually embrace the specification. They're insisting on using the colloquial, as we discussed in the first part of the argument, the colloquial use of not distracting, and our point is that if you read this patent and this specification, you would know we are not talking about whether things are flashing. We're not talking about whether I would dart my head to the side. Of course, we have to draw the user's attention, but what we mean by in an unobtrusive manner that doesn't distract the user, in this context, is that it's going to be in a part of the screen that they're not using in their primary interaction, and so there is nothing that renders that indefinite. I don't believe that the parenthetical language and the other language in claims in columns 3 and 6 could possibly be deemed indefinite under this Court's precedence, and while my friend does refer a lot to the Deere case, I just don't understand how you can say that the fact that something is generally convex is anything approaching an actual physical definition of something being easily washed off, or take the notion of something being readily installed. There's an example in the Schur patent that it says it will generally, it doesn't have to, but generally won't use tools. That's not a definition, but the Court said someone who is reading this patent and reading this specification would see this discussion of not using tools and would understand, even though you could have people who are old, who are young, who have different technical skills and who don't, you can look at the specification and see this inventor was talking about something that didn't involve tools, and I think the Chief Judge gives a doctrinal reason why we don't insist on this level of granularity, and that is there are going to be inventions like this one that apply across so many different contexts that you are asking something kind of very, very, very difficult in terms of... Mr. Goldstein, if we don't agree that the EG phrase sufficiently ties down and is informative enough of what is the scope and meets and bounds of unobtrusive manner, where does that leave you? Well, I think you might think that for two reasons. One is that you're unsatisfied with... If I could answer without... Please, no. Please proceed. If you think it's because it's an EG, then what I would say is that we nonetheless prevail because in Column 6 and Column 3 there is non-EG language that talks about the spatial dimension in Column 6 and it talks about the unused space in Column 3 and those are not examples. And I would also say that, you know, Schur specifically talks about examples. If you think that that claim language... Excuse me, that specification language is itself simply too indefinite, well, then I suppose we would lose. I would just be encouraged by the fact that the other side doesn't even seriously argue that if we get to that language in the specification, then this Court's precedence for indefiniteness are satisfied. Did we get all five of your points? I think the... sufficiently so. Okay. Thank you, sir. Thank you, Mr. Goldstein. Our next case, then we'll... Thank you.